United States District Court
District of Massachusetts

_____
                                   )
**NEW CINGULAR WIRELESS PCS, LLC,** )
       **Plaintiff,**           )
                                   )
       **v.**                    )    Civil Action No.
                                   )    10-11541-NMG
**CITY OF CAMBRIDGE, BOARD OF**     )
**ZONING APPEAL OF THE CITY OF**    )
**CAMBRIDGE, and CONSTANTINE**      )
**ALEXANDER, TIMOTHY HUGHES,**      )
**BRENDAN SULLIVAN, DOUGLAS MYERS** )
**and SLATER ANDERSON, in their**   )
**capacities as members of the**    )
**Board of Zoning Appeal of the**   )
**City of Cambridge,**              )
       **Defendants.**           )
_____)

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff New Cingular Wireless PCS, LLC ("AT&T") sues the City of Cambridge ("Cambridge"), the Board of Zoning Appeal of the City of Cambridge ("the Board") and individual members thereof in their capacity as members (collectively, "the defendants") for two alleged violations of the Federal Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7)(B). The complaint alleges that the defendants violated the TCA by effectively prohibiting the provision of personal wireless services (Count I) and by failing to issue a decision supported by substantial evidence (Count II).

Currently before the Court is 1) plaintiff's motion for

summary judgment on Count II and 2) the defendants' motion to amend their answer.

I. **Background**

This case arises from the Board's denial of AT&T's application for a special permit to install wireless communication antennae on the roof of an apartment building on Massachusetts Avenue in Cambridge, Massachusetts. AT&T's proposal calls for the installation of twelve antennae on six "stealth chimneys" made of fiberglass and designed to match other chimneys already on the roof. The chimneys facing Massachusetts Avenue would be the same height (six feet) and roughly the same width as the existing chimneys and would be set back six feet from the edge of the roof. The chimneys on the other side of the building would be ten feet high and set back ten feet from the edge.

Three public hearings concerning the application were held before the Board between January and June, 2010. AT&T provided the Board with photographs and photo-simulations of the proposed plan and explained that its proposal had been presented to and approved by the Cambridge Planning Board. AT&T stated that the proposed installation was necessary to close a coverage gap just north of Harvard Square and that numerous other locations had been considered but proved either infeasible or unresponsive.

Although the Board voted three-to-two in favor of AT&T's

application, that vote fell short of the four-member affirmative vote required by ordinance to approve a special permit. The Board's written decision provided a short summary of the relevant proceedings, including a summary of the various aesthetic objections to the proposal, and then stated that the denial was based upon "all the information presented" and upon "the absence of one or more" of six criteria. The six criteria specified are those listed in Section 10.43 of Cambridge's Zoning Ordinance, which sets forth the criteria by which local boards evaluate whether a special permit should be denied as detrimental to the public interest.

## II. **Analysis**

The purpose of the Telecommunications Act is to facilitate the national development of wireless telephone service. The Act, "an exercise in cooperative federalism", delegates authority over the placement and construction of facilities to state and local authority. Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21-22 (1st Cir. 2002). That authority, however, is subject to five limitations enumerated in 47 U.S.C. § 332(c)(7)(B).

Plaintiff alleges that the Board's rejection of its special application violates, as a matter of law, one such limitation which provides that any decision from a local board denying a request to place or construct personal wireless services

facilities "shall be in writing and supported by substantial evidence contained in a written record." § 332(c)(7)(B)(iii). Plaintiff contends that the decision was insufficient because 1) it did not adequately explain why the permit was denied and 2) the denial was not supported by substantial evidence in the record.

The defendants counter that the disputed limitation on local authority violates the Tenth Amendment of the United States Constitution and that, in any event, the board's decision met its requirements.  Defendants also move to amend their answer to add their constitutional defense, which they raised for the first time in opposition to plaintiff's motion.

### A. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## B. Constitutional Analysis

The Tenth Amendment declares that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Amendment affirms the principle of federalism and has been described as a "truism" that "all is retained which has not been surrendered." United States v. Darby, 312 U.S. 100, 124 (1941).

A Tenth Amendment challenge to federal regulation requires a court to determine whether the federal government has exceeded its constitutional authority and impermissibly encroached on state sovereignty. See New York v. United States, 505 U.S. 144, 157 (1992). One way in which Congress exceeds its constitutional authority is by "commandeering" states to accomplish federal ends, i.e., by "directly compelling [states] to enact and enforce a federal regulatory program." Id. at 161 (quoting Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 288 (1981)). Although Congress may, pursuant to its enumerated powers and the Supremacy Clause, govern the people directly or preempt state regulation with direct federal regulation, it may not "require the States to govern according to [its] instructions." Id. at 162.

Nonetheless, Congress may encourage states to promote federal policies in a variety of ways. For example, where

-5-

Congress has the authority to regulate private activity under the Commerce Clause, it may encourage states to take desired affirmative action by offering them the choice of 1) regulating that activity according to federal standards or 2) having state law pre-empted by federal regulation. Id. at 167; see FERC v. Mississippi, 456 U.S. 742, 765-66 (1982). Such an arrangement falls short of outright coercion and "offers the States a vehicle for remaining active in an area of overriding concern." FERC, 456 U.S. at 766. State autonomy is preserved because a state may choose not to regulate and instead "supplement [the federal] program to the extent state law is not pre-empted." New York, 505 U.S. at 168. Where, however, the federal government attempts to offer states a "choice" between two options which each require affirmative state enactment or administration of a federal program, it crosses the line from encouragement to coercion. See Printz, 521 U.S. at 927; New York, 505 U.S. at 168.

Here, the Court does not doubt that Congress, pursuant to the Commerce Clause, may preempt states from regulating the construction and operation of personal wireless communications facilities. Defendants agree yet contend that Congress has not preempted but instead employed a "partial preemption approach" which runs afoul of the Tenth Amendment insofar as the only alternative to abiding by federal standards is to abdicate zoning authority over the construction of communication towers. A local

board is left with no meaningful choice, defendants assert, because to withdraw from land-use regulation and leave the construction of such structures "to the whims of the market" terminates one of its most vital functions.

Plaintiff counters that Congress has undoubtedly preempted local permitting decisions to the extent they violate § 332(c)(7)(B) and has simply imposed a procedural standard on local administrative agencies as a condition to their continued involvement in a preemptable field such as wireless communications. Thus, plaintiffs assert, local boards are left with the perfectly constitutional choice of 1) denying an application to place or construct wireless service facilities only where the denial is memorialized in writing and supported by substantial evidence or 2) not regulating the placement or construction of such facilities.

The Court agrees with plaintiff and concludes that the substantial evidence requirement does not violate the Tenth Amendment. Congress acted pursuant to its power to regulate interstate commerce and "made its intent to preempt certain areas of local zoning control clear and manifest in the TCA's specific limitations on state zoning powers." Patterson v. Omnipoint Comm'ns, Inc., 122 F. Supp. 2d 222, 229 (D. Mass. 2000); see also Cellular Phone Taskforce v. F.C.C., 205 F.3d 82, 96-97 (2d Cir. 2000). It has placed a procedural requirement on a board's

decision-making process by requiring that such decisions be in writing and supported by substantial evidence.  Local zoning boards may either abide by that limitation or relinquish authority over the construction and placement of personal wireless service facilities.  Although the latter option may not be attractive, it involves no affirmative obligation to enforce federal policy.  The state (or municipality) retains the ultimate decision as to whether to comply or opt out entirely.

The Court will therefore deny the defendants' motion to amend their answer as futile and will proceed to analyze whether the Board's denial of plaintiff's application complies with the substantial evidence requirement.

**C.  The Board's Decision**

1.  Standard of Review

A district court's review of a board's decision is not de novo.  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 95 (1st Cir. 2002).  Rather, a board's decision must be upheld unless it is not supported by substantial evidence.  Id.

The burden of proving that the record contains substantial evidence rests with the zoning board.  T-Mobile Northeast LLC v. City of Lawrence, 755 F. Supp. 2d 286, 291 (D. Mass. 2010); Sprint Spectrum, LLP v. Town of Easton, 982 F. Supp. 47, 49 (D. Mass. 1997).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Nat'l Tower, 297 F.3d at 22 (internal citation and quotation omitted). When recording its decision, the board need not present "formal findings of fact or conclusions of law" or "state every [supporting] fact in the record." Id. at 20-21. Nevertheless, it may not "hide the ball". Id. at 21. At a minimum,

> [a] written denial must contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons.

Id. (internal quotation omitted).

The Court's review is confined to the record before the zoning board, ATC Realty, 303 F.3d at 95, and must take into account evidence that supports and contradicts the board's conclusions. Cellco P'ship v. Town of Grafton, 336 F. Supp. 2d 71, 79 (D. Mass. 2004). A mere recitation of provisions of state and local zoning law does not constitute "substantial evidence" under the Act. See T-Mobile Northeast, 755 F. Supp. 2d at 291; Sprint Spectrum L.P. v. Town of Swansea, 574 F. Supp. 2d 227, 236 (D. Mass. 2008). However, if the evidence permits inconsistent conclusions, the court will defer to the decision of the local authority, "provided the local board picks between reasonable inferences from the record before it." Nat'l Tower, 297 F.3d at 23.

2.  <u>Application</u>

Indisputably, the Board's "one or more" approach did not particularize the legal grounds upon which its decision was based.  Even so, the defendants argue that it is easy to infer that the denial was pursuant to the first criterion, which calls for the denial of a special permit where it appears the application does not meet the requirements of the ordinance. Among those requirements is that a local board, when evaluating special permits for wireless communication facilities, considers "[t]he extent to which the visual impact of the various elements of the proposed facility is minimized" through use of mechanical elements or other materials serving to blend the communications facility with its environment.  <u>See</u> Section 4.32(g)(1) and 4.40(49)(2).  Defendants state that the written decision and supporting record clearly demonstrate that the denial was based on objections from board members and a member of the public to the negative aesthetic impact of faux chimneys upon a highly visible and architecturally significant building in "one of the nicest residential areas in Cambridge."

Although plaintiff makes a reasonable argument, the Court infers from the summary of the facts provided in the written decision, and from the record as a whole, that at least one reason the permit was denied was the aesthetic objections raised at the hearings and summarized in the Board's written decision.

It is also true, however, that the Board's decision comes very close to "hiding the ball." Nevertheless, it suffices and the Court will evaluate whether the Board's aesthetic objections were supported by substantial evidence in the record.

Aesthetic objections, if properly supported by substantial evidence, can justify denying a special permit. See Southwestern Bell Mobile Systs., Inc. v. Todd, 244 F.3d 51, 61 (1st Cir. 2001) (holding that the TCA does not prevent "municipalities from exercising their traditional prerogative to restrict and control development based on aesthetic considerations"); New Cingular Wireless PCS, LLC v. Town of Stow, No. 06-10659, 2009 WL 2018450, at *7 (D. Mass. July 9, 2009) ("A negative aesthetic impact, properly supported by substantial evidence, may itself be a sufficient reason to deny a permit."). An aesthetic judgment, however, may not "mask ... a de facto prohibition of personal wireless services" and must be "grounded in the specifics of the case." Southwestern Bell, 244 F.3d at 61. Generalized concerns that would apply to any wireless service facility or aesthetic judgments that are "demonstrably without substance" do not amount to substantial evidence, see id., "particularly where experts or other administrative bodies have expressed a contrary view." Nextel Comm'ns v. Manchester-by-the-Sea, 115 F. Supp. 2d 65 (D. Mass. 2000).

Plaintiff argues that the generalized concerns of a single

neighbor and two board members about the look of the proposed facility do not amount to substantial evidence where the Planning Board expressed a contrary view and the record shows that AT&T's proposed facility would be concealed inside faux chimneys which are painted, placed and oriented on the building roof to blend in with the existing chimneys.

Defendants respond that, throughout the hearings, there were lengthy discussions and questioning with respect to the visual impact of the project. They direct the Court's attention to several instances in which Board members stated that this was an especially prominent, architecturally significant building upon which the protruding and ersatz "stealth chimneys" would be especially conspicuous and unattractive. The written decision summarizes those sentiments and expressly refers to certain members' judgment that the chimneys were too cheaply made and did not actually blend in. Although only one member of the community opposed the installation, defendants point out that this community member spoke on behalf of her 41-unit condominium in the neighboring building. Defendants contend that there is thus ample basis upon which a reasonable arbiter could find the aesthetic judgment supported by the record and the Board's judgment entitled to deference.

The Court agrees with defendants. The Cambridge ordinance explicitly directs Board members to consider, based on the

evidence presented, the visual impact of the facility and thus implicitly authorizes them to reject an application where the impact is deemed detrimental. As another judge in this district has observed,

> Beauty is in the eye of the beholder, and it is not uncommon for persons to form differing opinions about what is visually pleasing, especially in the mid-range, rather than at the extremes, of the spectrum of possibilities.

Nextel Comm'ns v. City of Cambridge, 246 F. Fupp. 2d 118, 124 (D. Mass. 2003).

The objecting Board members discerned a substantial negative impact based upon their assessment of the visual depictions of the proposal. In their opinion, the "stealth" chimneys did not minimize the negative impact. Because their conclusions are adequately summarized and grounded in the specifics of the case, the substantial evidence requirement is satisfied.

## ORDER

In accordance with the foregoing,

1) Plaintiff's Motion for Partial Summary Judgment (Docket No. 21) is **DENIED,** but

2) Defendants' Motion for Leave to Amend Answer (Docket No. 29) is also **DENIED.**

**So ordered.**

                                         /s/ Nathaniel M. Gorton
                                         Nathaniel M. Gorton
                                         United States District Judge

Dated December 22, 2011